UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-61717-CV-WILLIAMS

DON KING PRODUCTIONS, INC.,

    Plaintiff,

vs.

SHANE MOSLEY, *et al.*,

    Defendants.
_____/

### ORDER

**THIS MATTER** is before the Court on Defendant Sugar Shane Mosley Promotions, Inc. ("Mosley Promotions"), and Gobox Promotions, Inc.'s ("GoBox") motion to dismiss for lack of personal jurisdiction (DE 37), to which Plaintiff Don King Productions, Inc. ("DKP") filed a response in opposition (DE 48). No reply was filed and the time to do so has passed. The Court held a hearing in this matter on January 6, 2016.

**I.   BACKGROUND**

The facts and allegations of this matter are well-known to the Parties and set out more thoroughly in the Court's order denying Plaintiff's motion for a temporary restraining order (DE 29). Plaintiff brought a claim for tortious interference with a contractual relationship against Mosley Promotions and GoBox arising out of their purported interference with Plaintiff's Promotional Agreement with Ricardo Mayorga. Plaintiff alleges that GoBox and Mosley Promotions knew about Plaintiff's Promotional Agreement with Mayorga and that the Defendants intentionally and unjustifiably

1

interfered with that agreement by organizing, promoting, and holding a boxing match between Shane Mosley and Ricardo Mayorga. The Court recites only those allegations relevant to the instant motion below.

Plaintiff DKP is a Florida corporation with its principal place of business in Deerfield Beach, Florida. (DE 1 ¶ 6). DKP promotes boxing matches around the world. (*Id.*). DKP and Mayorga entered into a Promotional Agreement in 2009 and in 2014, Mayorga signed a Memorandum of Understanding ("MOU") and an Addendum to the 2009 Promotional Agreement with DKP. (*Id.* ¶¶ 12, 25-26). All of those agreements were signed in Florida at DKP's headquarters. (*See* DE 1-1 at 10; DE 1-2; DE 1-3).

Under those agreements, Mayorga granted DKP the sole and exclusive right to secure and arrange all of his professional boxing bouts. (DE 1-1 at 2, Section I. Promotion). Pursuant to the terms of the Promotional Agreement, Mayorga shall not participate "in any bouts other than Bouts promoted or co-promoted by [DKP] or for which [DKP] has granted Fighter prior written permission." (DE 1-1 at 4, Section XI. Exclusivity). Mayorga also promised that he would not render his services as a professional boxer to any person or entity other than DKP. (*Id.*). The Promotional Agreement further provides that Mayorga "irrevocably submits . . . to the jurisdiction of the United States District Court, Southern District of New York," and that if that court does not have jurisdiction, then Mayorga submits to jurisdiction in the state courts of New York. (DE 1-1 at 6, Section XIX, Forum Selection/Governing Law). The Agreement states that it shall be governed, construed, and enforced in accordance with the substantive law of contracts of the State of New York and without regard to New York choice of law principles. (*Id.*).

2

Defendant GoBox is a Nevada Corporation with its principal place of business in Las Vegas, Nevada. (DE 38-1, Affidavit of Shane Mosley ¶ 4). GoBox was incorporated in Nevada in July of 2015. (*Id.* ¶ 14). GoBox does not conduct, operate, or engage in business in Florida, is not, and has never been, registered to do business in Florida, and does not have an office or registered agent in Florida. (*Id.* ¶¶ 5-7). GoBox does not own, rent, or lease property in Florida and it does not have any telephone numbers, bank accounts, or officers in Florida. (*Id.* ¶¶ 11-13).

Defendant Mosley Promotions was a Nevada corporation with its principal place of business in Las Vegas, Nevada. (*Id.* ¶ 20). Mosley Promotions ceased operations and was dissolved in September of 2014. (*Id.* ¶ 18). Mosley Promotions does not conduct, operate, or engage in business in Florida, is not, and has never been, registered to do business in Florida, and does not have an office or registered agent in Florida. (*Id.* ¶¶ 21-23). Mosley Promotions does not own, rent, or lease property in Florida and it does not have any telephone numbers, bank accounts, or officers in Florida. (*Id.* ¶¶ 27-29).

Plaintiffs allege that GoBox and Mosley Promotions were responsible for organizing and promoting the August 29, 2015 boxing match between Shane Mosley and Ricardo Mayorga at the Forum, in Inglewood, California. (DE 1 ¶ 27). However, according to the affidavit of Shane Mosley, who was the President and CEO of Mosley Promotions, Mosley Promotions had no involvement or participation in the August 29, 2015 boxing match. (DE 38-1, Mosley Aff. ¶ 19). And, the Bout Agreement between Mayorga and Mosley for the August 29, 2105 match makes no mention of Mosley Promotions. (DE 58).

The August 29, 2015 boxing match was the first event promoted by GoBox. (DE 38-1, Mosely Aff. ¶ 15). GoBox licensed the rights to broadcast the August 29, 2015 boxing match to third-party companies. (*Id.* ¶ 16). The match was broadcasted on Pay-Per-View in the United States and Canada and was "aggressively promoted" through television advertisements and on the internet. (DE 1 ¶¶ 28, 30). Although GoBox did not execute print, television, or cable marketing or advertising for the August 29, 2015 match, GoBox "generally marketed and promoted the Event via online platforms, such as social media, but these marketing activities were not specifically directed at nor focused on Florida." (DE 38-1, Mosley Aff. ¶ 17). For example, GoBox created promotional photographs and flyers for the August 29, 2015 match which were distributed on the internet. (DE 48, Ex. A).

DKP advised Mosley Promotions and GoBox of the "exclusive nature of the contractual relationship between DKP and Mayorga" and requested that Defendants "voluntarily agree not to continue to promote, advertise, and carry out Mayorga's participation" in the August 29, 2015 match. (DE 1 ¶ 39). On July 30, 2015, DKP, through its attorneys, sent a letter to Defendants demanding Defendants cease their efforts related to the August 29, 2015 match because such efforts constituted a "knowing, intentional, and unjustified tortious interference" with DKP's contractual agreement with Mayorga. (DE 1-4). Defendants continued to promote the August 29, 2015 match and "made it clear to DKP that they do not intend to cease their conduct despite the contractual relationship between DKP and Mayorga." (DE 1 ¶ 39).

At the January 5, 2016 hearing, the Parties agreed that Florida Statute § 48.193(1)(a)(2) provides the only viable basis for exercising personal jurisdiction over the Defendants under the Florida long-arm statute.

## II.   LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction, the Court accepts as true all allegations in the complaint and determines whether the plaintiff has met his burden of establishing a prima facie case of personal jurisdiction. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *see also Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009) ("It goes without saying that, where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing personal jurisdiction is present."). A prima facie case is established if the plaintiff puts forth enough evidence to withstand a motion for a directed verdict. *Stubbs*, 447 F.3d at 1360. If the defendant challenges jurisdiction by submitting affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction. *Id.* When the plaintiff's complaint, supporting affidavits, and evidence conflict with the defendant's affidavits, the Court construes all reasonable inferences in the plaintiff's favor. *Id.*[1]

---

[1] Because a court should "order limited jurisdictional discovery where the information the plaintiff seeks, if it exists, would give rise to jurisdiction," the Court gave Plaintiff an opportunity to identify the information it sought to establish personal jurisdiction. *See RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 790-91 (11th Cir. 2014); (DE 52, 55, 56). The Court permitted very limited discovery based upon the Mosely affidavit and the argument heard at the January 5, 2016 hearing because it did not appear that there was a genuine dispute concerning the jurisdictional facts proffered by Plaintiff and those proffered by Defendants. *See Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1320-21 (S.D. Fla. 2009); *RMS Titanic*, 589 F. App'x 779.

A federal court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). The Court engages in a two-part analysis to determine if it may exercise jurisdiction over a non-resident defendant. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). First, the Court determines whether the defendant's activities satisfy the state's long-arm statute. *Id.* Second, the Court determines whether the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Id.*

## III. ANALYSIS

### A. The Florida Long-Arm Statute

To exercise personal jurisdiction over Defendants, the Court must first find that the Defendants' conduct placed them within the reach of Florida's long-arm statute. The reach of the long-arm statute is a question of Florida law, which the Court construes as would the Florida Supreme Court. *Meier*, 288 F.3d at 1271. In the absence of Florida Supreme Court precedent, the Court must adhere to the decisions of Florida's intermediate appellate courts. *Id.* At the hearing on the motion to dismiss, the Parties agreed that Florida Statute § 48.193(1)(a)(2) provides the only possible basis for the exercise of personal jurisdiction.[2] Under § 48.193(1)(a)(2), a defendant is subject to

---

[2] In the complaint, Plaintiff identified several other subsections as potentially providing a basis for the exercise of personal jurisdiction under the long-arm statute. The Court has found, and the Parties agree, that none of those subsections is applicable here. Moreover, in opposing Defendants' motion, Plaintiff only addressed § 48.193(1)(a)(2) and § 48.193(1)(a)(6). However, § 48.193(1)(a)(6) applies to claims involving personal injury or property damage. *See Sun Bank v. E.F. Hutton, Inc.*, 926 F.2d 1030, 1033 (11th Cir. 1991); *Aetna Life and Casualty Co. v. Therm –O–Disc, Inc.*, 511 So. 2d 992 (Fla. 1987). Section 48.193(1)(a)(1) provides that a defendant is subject to personal jurisdiction for any cause of action arising out of the "[o]perating, conducting,

6

personal jurisdiction for any cause of action arising from the defendant committing a tortious act within the state. Fla. Stat. § 48.193(1)(a)(2).

The scope of § 48.193(1)(a)(2) is not limited to acts committed in Florida but extends to tortious acts committed by a defendant outside of Florida that cause injury within the state. See *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1353 (11th Cir. 2013); *Cable/Home Commc'n Corp.,* 902 F.2d at 856. Thus, a defendant's physical presence is not required to commit a tortious act within the state. See *Wendt v. Horowitz,* 822 So. 2d 1252, 1260 (Fla. 2002). Rather, a non-resident defendant may commit a tortious act within the state and be subject to personal jurisdiction, through an electronic, written, or telephonic communication into Florida so long as the plaintiff's cause of action arises from that communication. *Id.* The requirement that the cause of action arise from the communication into the state is necessary in order to satisfy the "connexity" requirement of section 48.193(1). *Wendt v. Horowitz,* 822 So. 2d 1252, 1260 (Fla. 2002). Accordingly, the critical factor in deciding whether a tort committed out of state may subject the tortfeasor to personal jurisdiction in Florida is whether the cause of action arose from the contact with the forum state. *Wiggins v. Tigrent, Inc.,* 147 So. 3d 76, 87 (Fla. Dist. Ct. App. 2014).

To prevail on a tortious interference claim, a plaintiff must establish: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any

---

engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." The evidence before the Court and Mr. Mosley's affidavit demonstrates that this section is inapplicable. For the same reason, the Court finds that § 48.193(2) is not applicable. Likewise, Plaintiffs have not alleged that any contract exists between the Parties and the affidavit of Mr. Mosely expressly disclaims that any such contract exists, making § 48.193(1)(a)(7) inapplicable.

7

justification or privilege; and (5) damages resulting from the breach. *Mattocks v. Black Entm't Television LLC*, 43 F. Supp. 3d 1311, 1318 (S.D. Fla. 2014). Plaintiff contends that Defendants knew about the 2009 Promotional Agreement with Mayorga and that by convincing Mayorga to participate in the August 29, 2015 match, Defendants intentionally procured Mayorga's breach of the 2009 Promotional Agreement, thereby causing injury to Plaintiff.

There is no evidence that the Defendants took any physical action within the State of Florida or that they directed any electronic, written, or telephonic communication into the state of Florida. Notably, there is no evidence whatsoever that Mosley Promotions was involved in organizing, arranging, or promoting the August 29, 2015 match. Plaintiff's justification for the exercise of personal jurisdiction over Defendants hinges on GoBox's marketing of the August 29, 2015 event on the internet. However, Plaintiff's cause of action did not arise from that marketing and Plaintiffs have not explained how the online promotional materials constitute tortious interference, particularly given that the materials were distributed after Mayorga had already breached the 2009 Promotional Agreement.[3] Rather, Plaintiff's cause of action—tortious interference with contract—arose from Defendants' solicitation of Mayorga's participation in the August 29, 2015 match and Mayorga's agreement to do so. There is nothing in the record to support the notion that Defendant's efforts to convince Mayorga to participate in the August 29, 2015 match or his subsequent agreement to participate in it occurred in Florida.

---

[3] For the purposes of this motion, the Court assumes that the 2009 Promotional Agreement was valid and in effect at the time Mayorga agreed to the August 29, 2015 match.

8

Consequently, because Plaintiff's cause of action does not arise out of GoBox's limited communications into Florida, *i.e.*, a nationwide, undifferentiated, online marketing campaign, Plaintiff has failed to establish that personal jurisdiction over Defendants is appropriate under the Florida long-arm statute. *See Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645 (Fla. Dist. Ct. App. 2013) (holding that the act giving rise to a tortious interference claim is the convincing of a party to breach the contract and that the fact that such convincing resulted in the breach of a Florida contract or the loss of income for a Florida company "is immaterial for the purpose of determining jurisdiction"); *Reiss v. Ocean World, S.A.*, 11 So. 3d 404, 406-07 (Fla. Dist. Ct. App. 2009) ("The second amended complaint did not allege nor could it have alleged—based on the facts of this case—that the tortious interference occurred *within* Florida. . . The electronic communications into Florida did not give rise to a cause of action. Cases interpreting *Wendt* have held that the communication into Florida must be tortious in and of itself, such as defamatory statements"); *PK Computers, Inc. v. Indep. Travel Agencies of Am., Inc.*, 656 So. 2d 254, 255 (Fla. Dist. Ct. App. 1995) (recognizing that for there to be jurisdiction over a tortious interference claim under section 48.193(b), the interference must occur within the state or arise from oral statements directed at listeners within the state); *Hunt v. Cornerstone Golf, Inc.*, 949 So. 2d 228, 230 (Fla. Dist. Ct. App. 2007) (holding that under section 48.193(1)(b) a tortious interference claim arose where the initial interfering communications, made prior to the breach, and that actions taken a week after the contract was terminated are "irrelevant to this analysis"); *iSocial Media Inc. v. bwin.party Digital Entm't PLC*, No. 12-81278, 2013 WL 5588238, at *11 (S.D. Fla. Oct. 10, 2013).

## B. Due Process

Although the Court need not reach the issue, the Court also finds that exercising personal jurisdiction over Defendants would not comport with the due process requirements of the Constitution. Due process is satisfied if (1) minimum contacts exist between the defendant and the forum state; and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1220 (11th Cir. 1999). The plaintiff bears the burden of establishing the first prong. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013). If he does, the burden shifts to the defendant to make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *Id.*

To determine if sufficient minimum contacts exist, the Court evaluates the quality and nature of the non-resident defendant's activity to see if the defendant has purposefully directed his activities toward the forum and its residents and whether the resulting litigation derives from injuries that arise out of or relate to those activities. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Cable/Home Commc'n Corp.*, 902 F.2d at 857 ("A forum may exercise specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities to forum residents and the resulting litigations derives from alleged injuries that arise out of or relate to those activities.") (internal quotations omitted).

Jurisdiction may be constitutionally asserted over a nonresident defendant when he has, by his own purposeful conduct, created a substantial connection with the forum. *Liccaiardello*, 544 F.3d at 1285. The Supreme Court "has made clear . . . that so long

10

as it creates a substantial connection with the forum even a single act can support jurisdiction." *Id.* at 1285 (quoting *Burger King*, 471 U.S. at 475). "Intentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Id.* In the context of intentional torts, the Eleventh Circuit evaluates the defendant's connection with the forum using the "effects test" announced by the Supreme Court in *Calder v. Jones*, 465 U.S. 783. *Id.* at 1288.

To satisfy the "minimum contacts" prong, the *Calder* "effects test" requires a plaintiff to demonstrate that the defendant committed a tort that was: (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state. *See Licciardello,* 544 F.3d at 1286. For the reasons set forth above, the Court concludes that Defendants do not have sufficient minimum contacts with Florida and that there is no evidence that Defendants tortious actions were purposefully directed at Florida. Defendant Mosley Promotions appears to have no contacts with Florida whatsoever. As for Defendant GoBox, the only potential contact that GoBox has with Florida is that it engaged in a national online advertising campaign to promote the August 29, 2015 match. The promotional materials themselves were not inherently tortious—unlike defamatory statements, libel, or copyright and trademark infringements—and there is no evidence that the promotional materials were purposefully directed at Florida or its citizens. Accordingly, the Court finds that Defendants do not have sufficient minimum contacts with Florida such that exercising personal jurisdiction over them would comport with due process.

## IV. CONCLUSION

For the reasons set forth above and stated on the record at the January 5, 2016 hearing, Defendants' motion to dismiss (DE 37) is **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE**. All pending motions are **DENIED AS MOOT**. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in chambers in Miami, Florida, this ___ day of January, 2016.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE